UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                      CIVIL ACTION NO. 05-CV-73504-DT

   vs.

                                    DISTRICT JUDGE ARTHUR J. TARNOW

KENNETH J. GRAHAM,           MAGISTRATE JUDGE MONA K. MAJZOUB
KYLE E. DRESBACH,

          Defendants,
and

COMERICA BANK,
THYSSENKRUPP MATERIALS, NA
INCORPORATED PENSION PLAN,

          Garnishee.
_____/

## ORDER DENYING BRITT MARIE GRAHAM'S MOTION TO INTERVENE

Britt Marie Graham seeks to intervene in this garnishment proceeding, claiming that she has a financial interest in her husband's pension plan retirement benefit.  Plaintiff filed a brief concurring in Plaintiff's Motion.  Defendants  filed briefs in opposition, claiming that in 2002 Mrs. Graham affirmatively elected to receive a lump sum payment, thereby forfeiting her interest in any joint survivorship benefits.  Mrs. Graham originally had a financial interest in her husband's pension plan retirement benefits because the benefits contained a qualified joint survivorship annuity, as required by federal law.  *See* 26 U.S.C. §§ 401(a)(11)(A)(I) and (B)(I), 29 U.S.C. 1055(a)(i) and (b)(i).

Mrs. Graham may intervene under Fed. R. Civ. P. 24(a)(2) only if (1) she has an interest in the subject of the garnishment proceedings; (2) the proceedings will likely impair that interest; and (3) the existing parties cannot adequately protect her interest.  *Bradley v. Millikin*, 828 F.2d 1186, 1192 (6th Cir. 1987).

**Facts**

Mr. Graham's pension benefits were administered through Defendant Thyssenkrup Materials, NA Incorporated Pension Plan ("the Pension Plan"). The Pension Plan is governed by the Employee Retirement Income Security Act ("ERISA"). The Pension Plan is currently "underfunded" under the ERISA statute.

Prior to 2002, Mrs. Graham had was entitled to a "qualified joint survivor annuity" from the Pension Plan. *See* 29 U.S.C. § 1055(d)(1). In 2002, Mr. and Mrs. Graham elected to take a lump sum payment in lieu of Mr. Graham's expected pension benefits. By electing to receive the pension benefits in a lump sum, Mrs. Graham's lost her right to joint survivorship benefits from the Pension Plan, at least temporarily. *See* 29 U.S.C. § 1055(c). Mrs. Graham gave appropriate signed consent to the waiver of her joint survivorship benefit rights in connection with the original 2002 lump-sum payment. *See Id.*

If the instant garnishment action had arisen immediately after the lump sum payment, Mrs. Graham would clearly have had no legal interest in the pension benefits, having validly elected to forfeit her joint survivorship benefit rights. However, subsequent events have complicated the situation to some extent. Because Mr. Graham had been one of his employer's most highly compensated employees, his lump sum payment came with strings attached.

The strings come from a federal regulation the parties refer to as the "high 25 rule," 26 C.F.R. 1.401(a)(4)-(5)(b). The high 25 rule limits the ability of underfunded ERISA pension plans to make lump-sum payments to certain highly compensated employees in lieu of normal pension benefits. The lump-sum payments to highly compensated former employees can be rather large. In this case, Mr. Graham's lump sum payment was originally well over one million dollars. Permitting large lump-sum payments to highly compensated employees in underfunded plans places the benefits of rank and file

-2-

beneficiaries at risk.  The high 25 rule puts limits on both the size and timing of payments to highly compensated employees in order to protect the benefits of other plan beneficiaries.

The high 25 rule applied to Mr. Graham's lump-sum payment, and the Pension Plan would normally be required to break Mr. Graham's payment into a series of smaller payments.[1]  Under the high 25 rule, pension plans can still issue single lump-sum payments to highly compensated employees by entering into security agreements with former employees that guarantee that the plan can recover some of the lump-sum payment in the event the plan becomes unable to meet its obligations to other beneficiaries.  *See e.g., Rev. Rul. 92-76.*

In this case, the parties entered into a "Pledge and Securities Agreement" (Def.'s Resp. at Ex. C.).  The agreement required that the Grahams keep a certain amount of money in Mr. Graham's individual retirement account, and allowed the Pension Plan to demand repayment of the lump-sum distribution in the event that the Mr. Graham's retirement account ceased to be adequate security for the payment.  In 2005, the Pension Plan noticed that the balance in Mr. Graham's retirement account was lower than the figure listed in the security agreement.  The Pension Plan then caused the money in Mr. Graham's account to be  transferred to the plan's trust.  Following this transfer, Mr. Graham and the Pension Plan worked out a new security agreement, and the trust transferred the funds back into Mr. Graham's account with accrued interest.

### Analysis

The dispute between the parties centers on the nature of the Pension Plan's transfer and return of Mr. Graham's lump sum payment.  Mrs. Graham argues that the transfer and return of the lump-sum

---

[1]It should be noted that the spaced out payments that the plan would have made under the high 25 rule after the Grahams made a lump-sum election would have been subject to the same notice and consent provisions as a normal lump-sum election.  That is, the Grahams would have needed to give their written consent once, within 90 days before the onset of the payments, and would not have had the right to later revoke their consent to the spaced out lump-sum benefits.

payment created a new "distribution" which gave her a renewed right to elect the form of Mr. Graham's compensation benefit.  Mrs. Graham argues that she is now able to assert her election rights again, and that she would not consent to a new lump sum payment, as she now wishes to take advantage of the joint survivorship annuity option.

Mrs. Graham's argument misconstrues  the nature of her original lump sum payment election and the subsequent security arrangements.       Mr. Graham elected a lump-sum payment in 2002.  In the absence of a security agreement, the high 25 rule requires the Pension Plan to make periodic payments to a highly compensated beneficiary who has elected a lump sum payment.  The decision to make a lump-sum election is serious, irrevocable, and may ultimately work an adverse result upon the spouse of a pension beneficiary.  It is for precisely this reason that 29 U.S.C. § 1055 (c)(2) and the cases relied upon by Plaintiff require that a lump-sum election cannot occur without a spouse's actual written consent  given within 90 days before the annuity starting date.

When a plan participant subject to the high 25 rule makes a lump sum election, individual payments must be spaced out over time even though the benefit is fixed at the time of election and survivorship benefits are cut off.  Though the lump-sum payments may cease entirely in the event that pension plan becomes severely underfunded, the only "distribution" occurs on the plan participant's annuity starting date.  The beneficiary and his or her spouse do not have the right to make a different election after each payment of the benefits due under their original election.  Although such beneficiaries have not yet received their entire pension benefit, they have irrevocably elected the form of that benefit.

The limitations placed upon payments made under the high 25 rule do not trigger new election rights.  The existence of a security agreement to accelerate lump sum payments does not change this situation.  Plan participants who have made a binding lump-sum election are not allowed to revisit their lump-sum election if it appears, in retrospect, to have been unwise.

-4-

Neither of the two unusual events in this case can be understood as a new "distribution" of a pension benefit. Plaintiff has cited no authority showing that a new "distribution" can ever occur once a plan beneficiary has made a valid lump-sum election. Moreover, allowing high 25 lump-sum beneficiaries to make a new benefit election whenever they violate the security agreement allowing the lump-sum payment would frustrate the purposes of the high 25 rule. Finding that such high 25 beneficiaries are entitled to a new benefit election when they violate their security agreements would functionally give them a special and valuable right to a second benefit election. The purpose of the high 25 rule is to prevent these beneficiaries, who are assumed to have superior knowledge of and control over the financial health of the pension plan, from gaming the pension plan rules to the detriment of other beneficiaries. Plaintiff's interpretation of the high 25 rule and 29 U.S.C. 1055 would do just that, and is therefore not persuasive.

Plaintiff and Mrs. Graham also argue that the Pension Plan made a new distribution because of the interest rate Defendants applied to the lump-sum monies they temporarily seized. Defendants eventually returned Plaintiff's money with interest, but Mrs. Graham maintains that Defendants did not apply an interest rate recited in the Pension Plan itself. Even assuming that Plaintiff was entitled to have a different interest rate applied to his lump-sum benefits while those benefits were held by Defendants, Mrs. Graham's argument is unavailing, because a miscalculation of the proper interest rate would not give her a different legal interest in the pension benefits.

Mrs. Graham therefore has no financial interest in the current garnishment proceeding. Her motion to intervene should be **DENIED**.

-5-

## NOTICE TO PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Sec'y of Health and Human Servs., 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. Willis v. Secretary, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**IT IS SO ORDERED.**

Dated: July 10, 2006          s/ Mona K. Majzoub_____
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### Proof of Service

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: July 10, 2006          s/ Lisa C. Bartlett_____
                              Courtroom Deputy

-6-